# EXHIBIT 1-A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES DOONER, FREDERICK R. SHELLHAMMER, III, THOMAS FOLEY, DAVID LEPPO, and ANTHONY CHELPATY, Individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HAIER US APPLIANCE SOLUTIONS, INC., d/b/a GE APPLIANCES, a Delaware Corporation,<br><br>Defendant. | Civil Action No. 1:17-cv-01635-JBS-KMW<br><br>**JOINT SETTLEMENT AND RELEASE** |

This Joint Stipulation of Settlement and Release (collectively, the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined), on the one hand, and Defendant (as hereinafter defined), and Haier (as hereinafter defined) on the other hand.

## RECITALS

WHEREAS, on March 10, 2017, Charles Dooner, Frederick R. Shellhammer, III, Thomas Foley, David Leppo, and Anthony Chelpaty filed an Individual, Collection Action and Class Complaint entitled *Dooner v. Haier US Appliance Solutions, Inc.* (No. 1:17-cv-001635-JBS-KMW) in the United States District Court for the District of New Jersey;

WHEREAS, Charles Dooner, Frederick R. Shellhammer, III, Thomas Foley, David Leppo, and Anthony Chelpaty filed an Amended Individual, Collective Action and Class Action Complaint on March X, 2018 which asserted class claims under the New Jersey Wage and Hour Law, the New Jersey Wage Payment Collection Law, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment Collection Law, the Illinois Wage Payment and Collection Act, the Illinois Minimum Wage Act, and the Kentucky Wage and Hour Laws, and collective claims under the Fair Labor Standards Act ("FLSA") and sought recovery of unpaid overtime wages and compensable time, liquidated damages, interest, and attorneys' fees and costs, as well as injunctive and declaratory relief;

WHEREAS, the aforementioned Complaints will henceforth be collectively referred to as "the Litigation";

WHEREAS, Defendant denied and continues to deny all of the allegations made by Plaintiffs in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has

1

agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Class Counsel (as hereinafter defined) has litigated this case during which time they have reviewed and analyzed thousands of documents and millions of data points produced by Defendant,

WHEREAS, the Parties participated in a private mediation session with Mediator Andrew Byrne in Miami, Florida on January 18, 2018;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiffs and the Class (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1 **Dooner.** *"Dooner"* shall mean *Charles Dooner, Frederick R. Shellhammer, III, Thomas Foley, David Leppo, And Anthony Chelpaty, on behalf of himself and all others similarly situated v. Haier US Appliance Solutions, Inc.*, Civil Action No. 1:17-cv-01635 (District of New Jersey).

1.2 **Collective Action Complaint.** "Collective Action Complaint" shall mean the Amended Complaint filed by Plaintiffs in *Charles Dooner, Frederick R. Shellhammer, III, Thomas Foley, David Leppo, and Anthony Chelpaty, on behalf of himself and all others similarly situated v. Haier US Appliance Solutions, Inc.*, Civil Action No. 1:17-cv-01635 (District of New Jersey).

1.3 **Class; Class Member.** "Class" shall mean all persons who worked as a service technician for Haier U.S. Appliance Solutions, Inc. d.b.a. GE Appliances, a Haier Company from January 1, 2017 through June 30, 2017, as identified on the class list attached hereto as Exhibit A. A member of the Class is a "Class Member."

1.4 **Claims Administrator.** "Claims Administrator" shall mean Angeion Group or other administrator as appointed by the Court.

1.5 **Class Counsel.** "Class Counsel" shall mean Swartz Swidler, LLC; Robert D. Soloff, P.A.; and Alan Eichenbaum.

1.6 **Class List.** "Class List" provides the names of all the Qualified Class Members attached hereto as Exhibit A.

1.7 **Court.** "Court" shall mean the United States District Court for the District of New Jersey, the Honorable Jerome Simandle and the Honorable Karen M. Williams presiding.

1.8 **Covered Period.** "Covered Period" shall mean January 1, 2017 through June 30, 2017.

1.9 **Covered Position.** "Covered Position" shall mean an individual who worked for Haier U.S. Solutions Inc., d/b/a GE Appliances, as a service technician during the "covered period."

1.10 **Defendant.** "Defendant" shall mean Haier US Appliance Solutions, Inc. ("Haier").

1.11 **Defendant's Counsel.** "Defendant's Counsel" shall mean Littler Mendelson, P.C. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Nina K. Markey, Esquire, Littler Mendelson, P.C., 1601 Cherry Street, Suite 1400, Philadelphia, PA 19102.

1.12 **Escrow Account.** "Escrow Account" shall mean the interest-bearing account created and controlled by the Claims Administrator.

1.13 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.14 **Haier.** "Haier" shall mean Haier U.S. Appliance Solutions, Inc., d.b.a. GE Appliances, a Haier Company, and all its subsidiaries, divisions, and all of its and their incumbent and former officers, directors, owners, shareholders, investors, agents, attorneys, fiduciaries, employees, successors, assigns and representatives.

1.15 **Litigation.** "Litigation" shall mean *Dooner, on behalf of himself and all others similarly situated v. Haier US Appliance Solutions, Inc.*, Civil Action No. 1:17-cv-01635 (District of New Jersey).

1.16 **Named Plaintiffs.** "Named Plaintiffs" shall refer to all individuals named in the caption of the Amended Complaint, Civil Action No. 1:17-cv-01635 (District of New Jersey).

1.17 **Net Settlement Payment.** "Net Settlement Payment" shall mean the remainder of the Settlement Payment after court-approved attorneys' fees and costs as described in Section 3.2, Service Awards described in 3.3, any taxes incurred directly or indirectly as a result of investing the Settlement Payment, and a $25,000 reserve fund.

1.18 **Non-Opt-In Plaintiff.** "Non-Opt-In Plaintiff" shall mean an individual who is a Class Member, but who did not file a Consent Form to join the Litigation prior to July 6, 2018.

1.19 **Opt-In Plaintiff.** "Opt-In Plaintiff" shall mean an individual who filed a Consent Form to join the Litigation prior to July 6, 2018.

1.20 **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the Final Order entered by the Court after the Fairness Hearing.

1.21 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.22 **Parties.** "Parties" shall mean Plaintiffs, the Class, and Defendant.

1.23 **Plaintiffs.** "Plaintiffs" shall mean each of the individuals who properly opted-in to the collective action and/or who are members of the Class.

1.24 **Qualified Class Member.** "Qualified Class Member" shall mean a Class Member who does not opt out.

1.25 **Service Awards.** "Service Awards" shall mean all amount(s) paid to Named Plaintiffs in addition to amounts they will receive per the settlement allocation formula, for their services in assisting in the litigation and settlement of this matter.

1.26 **Settlement Payment.** "Settlement Payment" shall mean the $2,150,000.00 payment that Defendant pays to settle the Litigation as described in Section 3.1.

2. **APPROVAL AND CLASS NOTICE**

2.1 **Retention of Claims Administrator.** Within 10 calendar days after the execution of this Agreement, the Parties shall retain the Claims Administrator to administer the claims process. The Claims Administrator shall be responsible for the claims notice and administration process and distribution to Qualified Class Members as provided herein. Defendant agrees to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement. The Claims Administrator's fees shall be paid out of the Settlement Payment.

2.2 **Preliminary Approval by the Court.** On or before April 2, 2018, Plaintiffs will submit to the Court a Motion for an Order Preliminarily Approving the Class Action Settlement and the Proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing (the "Motion for Preliminary Approval"). If the Court denies the Motion for Preliminary Approval, then the Litigation will resume unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. If a mutually agreed class settlement is not approved, the case will proceed as if no settlement had been attempted.

**2.3** **Class Notice**

(A) Attached to this Agreement as Exhibit A is the Class List setting out of the names, last known addresses, telephone numbers, email addresses, and number of months worked within the Covered Period for all Class Members.

(B) Within 10 calendar days after receiving the information described in Section 2.3(A), the Claims Administrator shall mail, via First Class United States mail, postage prepaid, and email, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the draft form attached as Exhibit B, to all Class Members using each individual's last known address and email as recorded in Defendant's records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing, as well as any such mail returned as undeliverable after any subsequent mailing(s) as set forth in Section 2.4.

(C) With the mailing from the Claims Administrator, those Class Members who did not opt-in to the Litigation prior to the mailing and emailing by the Claims Administrator shall also receive an opt-in form for the Class Member to opt-in to the Litigation. The opt-in form also shall be made available online on the website maintained by Class Counsel, www.haierlawsuit.com. The language on the website will be approved by Defendant.

(D) The Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing shall include the number of months worked within the Covered Period by each Class Member. Any Class Member who wishes to challenge the number of months he or she worked within the Covered Period must do so in a writing that includes the Class Member's name, employee ID number, the amount of months indicated in the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing, and the amount of months the Class Member believes he or she worked for Haier from January 1, 2017 through June 30, 2017. To be considered, such statement must be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member 60 days after the Claims Administrator mails such Notice to such Class Member. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email and overnight delivery not later than 3 calendar days after receipt thereof. The Claims Administrator will resolve the challenge and make a final and binding determination prior to the Fairness Hearing, without hearing or right to appeal.

**2.4   Class Member Opt-Out.**

(A)   Any Class Member may request exclusion from the Class by "opting out." Additionally, any Class Member who signed a consent form to opt-in to the collective action filed pursuant to the FLSA may withdraw their consent to participate in the collective action. Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). In the case of a class member who has opted in to the collective action under the FLSA, they must indicate their intent to withdraw their consent to participate in the collective action. To be effective, such Opt-Out Statements must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 60 calendar days after the Claims Administrator mails the initial Notice. The 30 day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case those Class Members may Opt-Out based on the later of: (a) 60 days from the initial mailing; or (b) 30 days from the remailing. The Claims Administrator shall not attempt more than 3 mailings of the Notice of Proposed Class Action Lawsuit and Fairness Hearing to any Class Member. The end of the "Opt-Out Period" shall be the later of: (a) 60 days from the initial mailing or (b) 30 calendar days after the last day on which the Claims Administrator makes a mailing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendant's Counsel in writing by email and overnight delivery of the precise date of the end of the Opt-Out Period.

(B)   The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 3 calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by both email and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

**2.5   Objections to Settlement.**

(A)   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by a date certain, to

6

        be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member the later of: (a) 60 days from the initial mailing; or (b) 30 days from a remailing sent to a specific class member. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email and overnight delivery not later than 3 calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 calendar days after the end of the Opt-Out Period.

      (B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 2.5(A). Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

      (C)     The Parties may file with the Court written responses to any filed objections not later than 7 calendar days before the Fairness Hearing.

**2.6**    **Entry of Order.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter an Order in accordance with this Agreement; (b) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.4(A); and (c) dismissing the Litigation with prejudice.

**2.7**    **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter an Order in accordance with this Agreement, or such Order does not become Final as defined herein, the Parties shall proceed as follows: The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of an Order approving this Agreement, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, and emailed to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

**2.9**    **Effect of Certain Percentage of the Class Members Opting Out of the Settlement.** If ten percent (10%) or more of the members of the Class exercise their rights to opt out and be excluded from the Class and the Agreement, Defendant shall have the right, notwithstanding any other provisions of the Agreement, to withdraw from the Agreement

and settlement terms, whereupon the Agreement will become null and void for all purposes and may not be used or introduced in further litigation or any other proceeding of any kind.

**2.10** **Termination of Agreement.**   This Agreement shall automatically terminate, and the final settlement certification shall automatically be cancelled if this Agreement is terminated pursuant to Paragraph 2.9, in which event this Agreement shall not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class is certifiable, or any other matter.

**3.     SETTLEMENT TERMS**

**3.1    Settlement Payment.**

(A) Defendant agrees to pay $2.15 million ($2,150,000.00), which shall resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any fees associated with facilitating the Settlement Payment (including Claims Administrator fees and FICA taxes), and employer payroll taxes.  Defendant will not be required to pay more than $2.15 million ($2,150,000.00) under the Agreement.

(B) Plaintiffs shall have the right, but not the obligation, to rescind this Agreement in the event that Defendant enters into a bankruptcy proceeding at any time up to the time of the distribution of Settlement Payment and bankruptcy preference period (the "Rescission Period").

(C) In the event that Defendant files for bankruptcy protection prior to Rescission Period, Plaintiffs shall have the right, but not the obligation, to seek administrative priority status for unpaid wages in the bankruptcy proceeding in addition to any other rights that are conferred by the terms of this Agreement. Defendant takes no position on the propriety of such a position, and reserves the right to take the position it determines is appropriate in the event such an application is made.  In no event will Defendant or the bankruptcy trustee be required to pay more than $2.15 million ($2,150,000.00) to Plaintiffs and Plaintiffs' Counsel to settle this action.

(D) Defendant shall deposit $2.15 million ($2,150,000.00) into the Escrow Account within 20 days after the Order Granting Final Approval. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Payment.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) At the Fairness Hearing, Class Counsel shall petition the Court for 33 1/3% of the Settlement Payment ($716,666.66) as an award of attorneys' fees and shall be permitted to petition separately for reimbursement of reasonable litigation costs

8

and expenses, which include the Claims Administrator's fees as described in Section 2.1.  Defendant shall have no additional liability for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs.

(B)  Assuming that the amount in Section 3.2(A) is approved by the Court in the Order Granting Final Approval, the Claims Administrator shall, within ten (10) days of payment by Defendant under Section 3.1(D), pay the amount in Section 3.2(A) to Class Counsel.

3.3  **Settlement Amounts Payable as Service Awards.**

(A)  At the Fairness Hearing, Class Counsel shall petition the Court for $25,000 of the Settlement Payment as Service Awards.  These Service Awards are requested because Named Plaintiffs have provided service to Plaintiffs by helping Class Counsel formulate claims and by assisting in bringing the Litigation forward.  Each Named Plaintiff will petition the Court for a $5,000 Service Award.

(B)  Assuming that the amount in Section 3.3(A) is approved by the Court in the Order Granting Final Approval, the Claims Administrator shall, within ten (10) days of payment by Defendant under Section 3.1(D), pay the amount in Section 3.3(A) to Named Plaintiffs.

3.4  **Distribution to Class Members.**

(A)  A Qualified Class Member's proportionate share of the Settlement Payment less any amounts approved by the Court under Sections 3.2 and 3.3 ("Net Settlement Payment") shall be determined based on the following Allocation Formula below.

The Net Settlement Payment shall be allocated as follows:

1. All Qualified Class Members who are Non-Opt-In Plaintiffs shall receive a flat $150 payment and shall also be awarded 1 point for each month worked during the class period.

2. All Qualified Class Members who are Opt-in Plaintiffs shall receive a flat $300.00 payment (representing the $150 awarded to Non-Opt-In Plaintiffs in addition to $150 in liquidated damages available pursuant to the FLSA) and shall also be awarded 2 points for each month worked during the class period.

3. A month is considered "worked" if the Qualified Class Member worked for any period of time during the month, as determined by records exchanged between the parties, and set forth as Confidential Exhibit A.

4. After subtracting from the Net Settlement Payment all amounts paid pursuant to subsections 1 and 2, the dollar value of each point shall be computed by dividing the remainder of the Net Settlement Payment by the number of points

9

awarded under subsections 1 and 2.

5. Each Qualified Class Member shall receive a total settlement distribution of the total of the flat payment in addition to the dollar value of the number of points awarded under this allocation. Non-Opt-In Plaintiffs' payments shall be reported as taxable wages and shall be issued a W2 for the entire payment. Opt-in Plaintiffs' payments shall be 50% taxable wages which will be reported on a W2, and 50% liquidated damages, which will be reported as non-wage income on a 1099.

*By way of example only, if the Net Settlement Payment was equal to $5,000, and there were 10 Qualified Class Members, 5 Non-Opt-In Plaintiffs and 5 Opt-In Plaintiffs, each of whom worked for 6 months in the covered period, the distribution would be as follows:*

*First, the 5 Opt-in Plaintiffs would be awarded $300 each and the 5 Non-Opt-In Plaintiffs would be awarded $150 each, totaling $2,250. The remainder of the Net Settlement Payment would thus be $2,750 ($5,000 - $2,250).*

*Second, the 5 Opt-In Plaintiffs would be awarded 2 points each for each of the 6 months worked (12 points each, totaling 60 points) and the 5 Non-Opt-In Plaintiffs would be awarded 1 point each for each of the 6 months worked (6 points each, totaling 30 points).*

*Third, the dollar value of each point would be calculated by dividing the remainder of the Net Settlement Payment ($2,750) by the total number of points awarded to all Qualified Class Members (18) to arrive at: $152.78.*

*Thus, the 5 Opt-In Plaintiffs would receive $1,833,36 ($300 + $152.78 x 12), half of which would be wages and half liquidated damages. The 5 Non-Opt-In Plaintiffs would receive $916.68 ($150 + $152.78 x 6), all of which would be reported as wages.*

*This example is solely utilized to explain the formula; it is not intended to estimate what the actual point valuation will be.*

(B) The Claims Administrator shall mail to all Qualified Class Members their payment of their proportionate share within 10 days of payment by Defendant under Section 3.1(D). The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses. If any checks are returned because of incorrect addresses, Defendant and Haier will provide, if available, the social security numbers of those Class Members whose checks were returned. The Claims Administrator's reasonable efforts shall include using social security numbers to obtain better address information and attempting to call such Qualified Class Members. Any additional efforts undertaken shall be in the sole

        discretion of the Claims Administrator, except that the Claims Administrator shall not undertake more than two (2) mailings.

    (C)    If payments to Qualified Class Members are not cashed within one hundred twenty (120) days of the date the check was mailed, the amount of any unclaimed settlement checks will be null and void and the money will remain in the Escrow Account. For situations involving incorrect addresses under Section 3.4(B), the 120-day period runs from the last mailing(s) of checks. The checks shall be distributed with a cover letter stating words to the effect that "the check must be cashed within one hundred twenty (120) days or it will become void." Any funds remaining in the Escrow Account after 120 days from the last mailing of checks will remain in the Escrow Account for ninety (90) days. Within the 90-day period, any Class Member may request a new check within the first sixty (60) days. Following the expiration of the 90-day period, any funds remaining in the Escrow Account will be sent to the Make-A-Wish Foundation.

**3.5**    **Taxability of Settlement Payments.**

    (A)    For tax purposes, 50% of payments to Opt-In Plaintiffs shall be treated as back wages and 50% of such payments shall be treated as liquidated damages. With regard to the Non-Opt-In Plaintiffs, 100% of payments shall be treated as back wages.

    (B)    Payments treated as back wages pursuant to Section 3.4(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

    (C)    The state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A) shall be paid out of the Settlement Payment.

    (D)    Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendant, Haier, and the Claims Administrator harmless from and against any and all taxes, interest, penalties,

11

attorneys' fees and other costs imposed on Defendant, Haier, or the Claims Administrator as a result of a Class Member's failure to timely pay such taxes. Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendant or Haier as to the taxability of the payments received pursuant to this Agreement.

**4. RELEASE**

**4.1 Release of Claims.**

(A) By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and each individual Qualified Class Member forever and fully release Defendant from all state wage and hour laws for failure to pay for hours worked and overtime wages, as well as attorneys' fees and costs related to such claims, from January 1, 2017 through June 30, 2017.

(B) In addition to the Released Claims described in Section 4.1(A), all Qualified Class Members forever and fully release Defendant from all Fair Labor Standards Act claims asserted in the Class Action Complaints from January 1, 2017 through June 30, 2017 ("FLSA Released Claims"). The FLSA Released Claims include all FLSA claims for unpaid overtime wages, liquidated damages, and attorneys' fees and costs related to such claims.

**4.2 Release of Fees and Costs for Settled Matters.** Class Counsel and Plaintiffs, on behalf of the Class and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.

**4.3 No Assignment.** Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**4.4 Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents

executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant or Haier in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**5.    MISCELLANEOUS**

**5.1    Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    Mediator Jurisdiction.** The Parties agree in the event of disputes involving the Class List and payments to the Class Members not resolved by the Claims Administrator pursuant to paragraph 2.3(B) to the satisfaction of the Parties that Mediator Andrew Byrne shall have exclusive jurisdiction.

**5.3    Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.4    Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5    Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**5.6    Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7    Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of

this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8**    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New Jersey, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.9**    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.  That Parties explicitly agree that no disputes relating to the interpretation or enforcement of this Agreement are subject to any arbitration agreement(s) between the Parties.

**5.10**   **Waivers, Modifications or Amendments to be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.11**   **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument.

**5.12**   **Facsimile Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile to counsel for the other party.  Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

**5.13**   **Authorization of Signature.**  Named Plaintiffs and Class Counsel are duly authorized to sign this Agreement on behalf of the Qualified Members of the Class.

**5.14**   **Confidentiality.**  All Parties agree that they will not publicize the terms of this Agreement, the negotiations with respect thereto, or other matters relating to the instant actions, either directly or indirectly, that is, through agents, attorneys, or accountants, or any other person or entity, either in specific or as to general content, except that Plaintiffs' Counsel shall be permitted to maintain on its website information regarding the

case and settlement, where such language will be agreed upon by the Parties. Notwithstanding the foregoing, Plaintiffs may disclose information concerning payments made to them to members of their immediate families, and Class Counsel may disclose information concerning this Agreement to its employees and agents to the extent necessary to effectuate the terms of the Agreement. Plaintiffs and Class Counsel may also disclose information concerning this Agreement to their respective counsel and tax advisors who have first agreed to keep said information confidential and to not disclose it to others. The foregoing shall not prohibit or restrict such disclosure as is required by law or as may be necessary for the prosecution of claims relating to the performance or enforcement of this Agreement, or prohibit or restrict Plaintiffs and Class Counsel from responding to any inquiry about this settlement or its underlying facts and circumstances from any governmental agency.

**5.15** **Data Security.** Class Counsel and Claims Administrator shall keep confidential and comply with all applicable data security laws and regulations regarding personal information of class members, including, but not limited to, social security numbers.

**5.16** **Press Releases.** The Parties and/or their counsel shall refrain from any public comment about this settlement. Plaintiffs and Class Counsel will not issue a press release or respond to any media inquiries regarding the settlement of the claims related to this matter. If the parties and/or their counsel are contacted by the media, they will merely inform them that the case has been resolved to the satisfaction of all parties. Notwithstanding, Plaintiffs' Counsel shall be permitted to maintain on its website information regarding the case and settlement, which such language will be agreed upon by the Parties.

DATED: 7/3/18

Hair U.S. Appliance Solutions, Inc., d.b.a. GE Appliances, a Haier Company
By: _____
Its: _____

DATED: 7/10/18

SWARTZ SWIDLER LLC as Class Counsel

By: _____
Justin L. Swidler

DATED: 7/2/2018

Robert D. Soloff, P.A. as Class Counsel

By: _____
Robert D. Soloff

15

DATED: 7/2/18         Alan Eichenbaum as Class Counsel

By: _____
    Alan Eichenbaum